JOHN H. KEY v. THE STATE.

*No. 1183. Decided April 14th, 1897.*

**1. Theft of Cattle—Indictment—Ownership—Want of Consent—Charge.**

On a trial for theft of one head of cattle, where the indictment contained two counts, one alleging ownership in C., and the other alleging it in C. as special owner holding it for Capps, and both of these parties testified positively to their want of

consent to the taking, a charge of the court, which authorized a conviction, if defendant took the property without the consent of either the general or special owner, was unobjectionable.

### 2. Same—Intent—Charge.

On a trial for theft of one head of cattle, where defendant had testified, that shortly after he first saw the animal, it became crippled and he took care of it and sold it to get pay for his attention and care of it, he not being able to find the owner; and the court charged the jury, in effect, that if, under such circumstances, he sold the animal for the purpose of only repaying himself for his care of the same, and with no fraudulent intent, he should not be convicted. But, if he fraudulently took said animal with intent to deprive the owner of the value of the same and appropriated it to his own use and benefit, he would be guilty, notwithstanding he had cared for and cured said animal and was entitled to pay for said attention. Held: The charge was sufficient, in the absence of special exceptions to same.

APPEAL from the District Court of Johnson. Tried below before Hon. J. M. HALL.

Appeal from a conviction for theft of one head of cattle; penalty, two years' imprisonment in the penitentiary.

The following statement taken from appellant's brief, is substantially correct, viz:

It was shown that O. R. Cole was the owner of a yearling, red in color, branded "C" on right hip, which in the spring of 1895, he placed in the pasture of S. B. Capps, with other cattle. That he got the other cattle, but the yearling not being found at the time, he did not get. The yearling remained in and about the pasture, sometime in and sometime out, until a more or less uncertain date in the fall of 1895. It appeared in the pasture of Riggs Pennington a short time before Christmas, 1895. Some time after this appellant's mother (with whom appellant was living), moved on the Riggs Pennington place and lived in the pasture. It is shown that no other cattle were in this pasture except the yearling and the cattle of appellant's mother. The yearling in question became crippled, sick and diseased, and was fed by appellant with his mother's cattle for about a month or more, cared for, nursed and its life saved. Some months after this appellant sold the yearling to one Jno. E. Poindexter, to whom he stated (as testified by Poindexter), that he had bought the yearling from one Cox, which statement was denied by Cox. It was shown that appellant before the sale, made inquiries as to the ownership of the yearling, and also that he stated that he thought he had a better right to the yearling than anyone else. Appellant testified as a witness in his own behalf that when he sold the yearling he thought he had a right so to do, and that he sold it for the purpose of reimbursing himself for the care, time and attention bestowed upon it. It was shown that appellant was not quite 18 years of age at the time of the sale.

*Ramsey & Brown,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of the theft of a head of cattle, and his punishment assessed at two years in the penitentiary; hence this appeal. There are no bills of exception in the record. There are two counts in the indictment, one of which charges the property and possession to have been in O. R. Cole, and the second count charges the property and possession to have been in O. R. Cole, holding the same for S. B. Capps. Appellant assigns as error that portion of the charge of the court which instructed the jury that if they believed from the evidence "that defendant did fraudulently take  * * said head of cattle * * * without the consent of said Capps, and without the consent of the said Cole, and without the consent of either one of them, * * * to find him guilty." Defendant insist that the instruction above quoted authorized the jury to convict defendant if he took said head of cattle without the consent of either the special or the general owner. If there was any question raised by the evidence as to the consent of either of said parties, then the contention of appellant might have some force; but the record shows emphatically and unequivocally, and it is not controverted, that both of these parties testified positively to their want of consent to the taking; and so, in our opinion, the cases cited by appellant on this point have no application. Appellant also objects to the sixth paragraph of the charge of the court, which is as follows: "If you believe from the evidence that the defendant, when he discovered said cattle was crippled, fed and cared for said cattle until it had recovered of its injury, and that afterwards he sold the same for the purpose only of repaying himself for the trouble and expense, if any, that he had incurred by his attentions to said animal, and not with intention of depriving the owner of the value of said animal, and to appropriate it to his, defendant's, use, then you will acquit him, and so say. But if he fraudulently took said animal, as explained in the fourth paragraph in this charge, then he would be guilty as charged in the indictment, even if he had cared for and cured said animal, and was entitled to pay for said attention." The evidence on the part of the State with reference to said head of cattle tended to show a fraudulent taking. On the other hand, appellant's testimony tended to show that, when his mother moved to the Poindexter place, said head of cattle was there, and by some means became crippled, and that defendant afterwards took care of it, and then sold it, believing, as he stated, that he had a right to sell it, because he could not find who the owner was, and desired pay for his attention and care of the animal. The charge of the court conceded the proposition that if defendant cared for the animal until it had recovered from its injury, and afterwards took and sold it for the purpose of repaying himself, in such event he was guilty of no offense. This was certainly as liberal as defendant could claim. Nor do we think he can properly complain that the court gave the alternative proposition, that if he fraudulently took said animal, as explained in the fourth paragraph of said charge, he would be guilty, notwithstanding he afterwards cared for and cured said animal, and was

37th Tex. Crim. Rep.— 33.

entitled to pay for said attention. Of course, the issues might have been more clearly presented, and the court might have instructed the jury that if there was no fraudulent intent at the time of the original taking, but defendant merely took possession of the animal for the purpose of caring for it and curing it, and afterwards formed the fraudulent intent to steal the animal, he would not be guilty in such case. But, as stated before, no exception was taken to the charge at the time, and although the record contains certain special charges, which appear to have been requested on this line, yet no exception was reserved to the refusal of the court to give the same. As stated, we think the charge as above quoted, though very general in its terms, was sufficient to present the issue in the case, and that the jury were not confused thereby, but understood the meaning of the court to authorize an acquittal if the original taking was merely to care for the animal, and defendant subsequently formed the fraudulent intent to appropriate it. These are all of the assignments of error that require notice. There appearing no error the judgment is affirmed.

*Affirmed.*